UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **KINGS CREEK APPAREL, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**WAKEFIELD'S, INC., d/b/a** )<br>**MARTIN'S FAMILY CLOTHING** )<br>**AND WAKEFIELD'S** )<br>**DEPARTMENT STORES, et al.,** )<br>)<br>**Defendants.** )<br>) | Case No.: 1:20-cv-00573-ACA |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kings Creek Apparel, LLC ("Kings Creek") filed this lawsuit against Defendants Wakefield's, Inc. and William Wakefield, alleging that they engaged in (1) trademark counterfeiting, in violation of 15 U.S.C. § 1114 ("Count One"); (2) false designation of origin and false or misleading description or representation of fact, in violation of 15 U.S.C. § 1125(a) ("Count Two"); (3) trademark dilution, in violation of 15 U.S.C. § 1125(c) ("Count Three"); (4) trademark dilution, in violation of Alabama Code § 8-12-17 ("Count Four"); and (5) common law trademark infringement, in violation of Alabama law ("Count Five"). (Doc. 4 at 9–14). Kings Creek moves for summary judgment in its favor on Counts One, Two, and Five. (Doc. 38; Doc. 39 at 3). Because a factfinder must determine whether

Defendants used a counterfeit mark, the court **DENIES** the motion for partial summary judgment.

I.  BACKGROUND

In reviewing a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

In 2014, Kings Creek's owner, Jesse Strickland, developed a logo of a wood duck to represent its brand, and Kings Creek has used that logo ever since. (Doc. 38-1 at 3 ¶¶ 3–4). In December 2017, the U.S. Patent and Trademark Office awarded Kings Creek a trademark for the logo, defining the mark as a "Wood duck profile surrounded by border with rounded edges." (Doc. 41-5 at 2). An image of the trademark is below.



Although Kings Creek's certificate of registration states that the scope of the trademark covers "[o]utdoor apparel namely headwear" (doc. 41-5), Kings Creek has been selling T-shirts using the trademark above the words "Kings Creek Apparel" since 2014. (Doc. 38-1 at 3 ¶ 4). Kings Creek operates a retail store in

Hoover, Alabama, and also sells products online. (Doc. 38-1 at 5 ¶ 7). An image of a Kings Creek T-shirt is below.



Wakefield's operates several brick and mortar and online department stores under different names. (Doc. 38-7 at 6). Mr. Wakefield is the majority owner of Wakefield's. (*Id.*). At some point, Wakefield's began selling shirts with a duck logo above the words "Alabama Outfitters." (*See id.* at 14). A picture of Wakefield's duck logo is below.



Mr. Wakefield testified that he could not recall who designed his duck logo, but he and his vendors "scour the Internet for ideas and inspirations." (*Id*. at 13).

In October 2019, Larry Tyra, a "fan of Kings Creek Apparel" and friend of Mr. Strickland, was shopping at a store operated by Wakefield's when he found one of the Wakefield's shirts bearing the duck logo. (Doc. 38-3 at 2–3 ¶ 2). Mr. Tyra texted Mr. Strickland a picture of the shirt and asked, "When did you [change] your brand?" (*Id.* at 3 ¶¶ 2–3).

In November 2019, Kings Creek mailed a cease and desist letter to Wakefield's, informing it that the logo on Wakefield's shirts infringed Kings Creek's trademark. (Doc. 38-2 at 3 ¶ 5; *id.* at 5–6). The return receipt for the letter shows that Mr. Wakefield received it on December 5, 2019. (*Id.* at 10). In December 2019 and early January 2020, other customers purchased shirts bearing the same duck drawing from Wakefield's physical stores. (Doc. 38-4 at 2–3 ¶ 2; Doc. 38-5 at 2–3 ¶ 2; Doc. 38-6 at 2–3 ¶ 2).

On January 13, 2020, Kings Creek's attorney emailed Mr. Wakefield, stating, "we have documentation of additional sales of the merchandise in question, after the cease and desist letter was received. At this point it is critical that a representative with your company, or your legal counsel, give my office a call." (Doc. 38-2 at 3 ¶ 6; *id.* at 12). Mr. Wakefield responded the same day, denying that Wakefield's was infringing Kings Creek's trademark because it had "never heard of them" and stating he believed the "[l]aw requires that we change art by 20% in order not to copy art or infringe on a trademark. In our opinion we have done so." (*Id.* at 4 ¶ 6; *id.* at 11). Mr. Wakefield refused to cease selling the merchandise with the duck, but agreed "to sell what we have, and we will not use OUR duck any further out of an abundance of caution and our desire to appease your client." (*Id.*). Mr. Wakefield later testified that based on these communications, "I called my stores, and I told them to take [the shirts] off the floor. . . . So I instructed them to take them off the

4

floor and to throw them away." (Doc. 38-7 at 12; *see also id.* at 9). A week after the email exchange between Kings Creek and Mr. Wakefield, Kings Creek's attorney purchased two shirts at a Wakefield's store bearing the duck logo and the words "Alabama Outfitters." (Doc. 38-2 at 4 ¶ 7).

## II. DISCUSSION

Kings Creek moves for summary judgment on Count One (trademark counterfeiting under 15 U.S.C. § 1114), Count Two (false designation of origin under 15 U.S.C. § 1125(a)), and Count Five (infringement under Alabama common law). (Doc. 39 at 3; Doc. 4 at 9–12). Specifically, it seeks judgment on the question of liability for those three claims as well as whether it is entitled to treble damages for use of a counterfeit mark, under 15 U.S.C. § 1117(b), or statutory damages for use of a counterfeit mark, under § 1117(c). (Doc. 39 at 13–32).

The Lanham Act defines a trademark as, among other things, any symbol used "to identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. A counterfeit is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Trademark infringement occurs when a person, without consent of the trademark registrant, "use[s] in commerce any reproduction, counterfeit, copy, or

5

colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). False designation of origin occurs when a person "uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Id.* § 1125(a)(1)(A). The elements of Alabama's common law cause of action for trademark infringement are not as clear, but the parties agree that all three claims rise and fall together. (*See* Doc. 39 at 14; Doc. 42 at 11 n.1).

Kings Creek contends that it is entitled to summary judgment on its claim that Defendants used a counterfeit of its protected trademark. (Doc. 39 at 15–19). However, differences between Kings Creek's trademark and Wakefield's duck design—such as the "Alabama Outfitter's" text underneath the drawing—create a genuine dispute of material fact about whether Wakefield's duck logo is "identical with, or substantially indistinguishable from," Kings Creek's trademark.[1]  *See* 15

---

[1] Both parties argue about the applicability of a "presumption of confusion" standard that some district courts and other circuits have used in analyzing claims of trademark infringement. (Doc. 39 at 15–19; Doc. 42 at 11–14). Neither party cites any published Eleventh Circuit caselaw permitting the court to use a presumption of confusion. Even if the undisputed evidence

U.S.C. § 1127.  The question whether Wakefield's design is a counterfeit must go to trial.

### III.    CONCLUSION

The court **DENIES** Kings Creek's motion for partial summary judgment.

**DONE** and **ORDERED** this November 30, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

established that Wakefield's design was a counterfeit mark, the court would not use a presumption that the Eleventh Circuit has never approved.